**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> **v.** <br><br> **DERRICK BLAND,** <br><br><br> **Defendant.** | **CASE NO. 4:22-cr-00577-12** |

## RESPONSE TO DEFENDANT'S MOTION TO REOPEN DETENTION HEARING PURSUANT TO 18 U.S.C. § 3142(f)(2)

The undersigned respectfully request that the Court deny Defendant's Motion to Reopen Detention Hearing Pursuant to 18 U.S.C. § 3142(f)(2) because (i) nothing presented amounts to "new information" and thus the motion fails to meet the standard to relitigate detention; (ii) length of prospective detention is not a factor for consideration under § 3142(f)(2); and (iii) the Defendant has not rebutted the presumption for detention and 3142(g) factors still support detention by clear and convincing evidence.

### FACTUAL BACKGROUND

Initially, seven defendants were charged by Complaint[1] and later indicted on November 16, 2022.[2] The Indictment contained four counts, all of which arise from a

---

[1] Jcoi Barley, Maurkael Brown, Jymonte McClendon, Emery Goodley, Terrell Davis, Terry Ardoin, and Travonte Ardoin.

[2] The Indictment additionally charged Chase Franklin Williams and JaKobe Anderson for a total of nine defendants.

planned robbery of a rival gang's "trap house" which for the safety of human life required immediate intervention and revealing the ongoing investigation. Despite the intervention, the investigation continued. Ultimately, the Superseding Indictment was filed on January 8, 2026, and charged eleven additional defendants (for a total of twenty) and fourteen additional counts (for a total of eighteen).

During the detention hearing on February 19, 2026, facts were elicited establishing the presumption to detain and further supported the § 3142(g) factors for detention. It was established that Free Money is an enterprise and that Bland was a member or affiliate of Free Money. Free Money conducts narcotics trafficking, weapons trafficking, robberies, murders on behalf of Free Money, and maintains locations ("trap houses") used to conduct Free Money business, namely store and sell controlled substances. At the hearing, it was established the Bland was engaged in at least two attempts to hunt and kill rival gang members. Bland was also engaged in controlled substance trade with Free Money. Bland was associated with one trap house in particular located off London Street in Houston, Texas.

These facts were before the Honorable Magistrate Richard Bennett at the detention hearing in connection with the Superseding Indictment, and they were properly weighed under the pretrial detention framework set forth in 18 U.S.C. § 3142. Pursuant to 18 U.S.C. § 3142(f) the government may move for detention based (i) specific criminal offense, (ii) serious flight risk, or (iii) serious risk to the obstruction of justice. Here, the government moved for detention under 18 U.S.C. § 3142(f)(1) and (2). For pretrial detention to be imposed, lack of reasonable assurance of either (i) appearance or (ii)

safety of others and the community is sufficient to detain; there is no requirement for both. *See United States v. Rueben*, 974 F.2d 580 (5th Cir. 1992). When ordering detention, a judicial officer must determine by clear and convincing evidence whether any condition or combination of conditions will reasonably assure the appearance of the defendant or ensure the safety of others and the community. See 18 U.S.C § 3142(f).

For criminal offenses specified in 18 U.S.C. § 3142(e)(3), the Court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community.[3] In making such a determination, the judicial officer must consider the factors laid out in 18 U.S.C. § 3142(g) such as the nature and circumstances of the offense, weight of the evidence, ties to the community, criminal history, and the seriousness of danger posed to the community posed by release.

Here, a rebuttable presumption existed pursuant to 18 U.S.C. § 3142(e)(3)(A)(1), (2), and (3). In the Court's "Findings of Fact and Law as to Presumptions under § 3142(e)" the Court found a rebuttable presumption existed and goes on to further find that Derrick Bland had *not introduced sufficient evidence to rebut the presumption*. (ECF No. 342). Specifically, Magistrate Judge Bennett found that "no evidence was proffered by the Defendant to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community." *Id.* at p.4. Therefore, by

---

[3] Additionally, pursuant to 18 U.S.C. § 3142(e)(2), there are circumstances based on criminal history that create the same presumption.

clear and convincing evidence, no condition or combination of conditions of release would reasonably assure the safety of any other person and the community.

The defendant requests this Court review the order of detention imposed by The Honorable Richard W. Bennett, U.S. Magistrate Judge, pursuant to 18 U.S.C. § 3145. In actuality, as set forth below, no new facts or circumstances have been presented by the defendant, yet defense asks this Court to reconsider and modify the detention order. Furthermore, the facts and circumstances presented to Magistrate Judge Bennett allowed him to soundly and lawfully find detention was necessary and reasonable under an analysis of the factors delineated in 18 U.S.C. § 3142(g).

**ARGUMENT**

**A.    DEFENDANT HAS NOT PRESENTED ANY NEW EVIDENCE OR MATERIAL INFORMATION TO JUSTIFY RE-OPENING DETENTION PURSUANT TO § 3142(f)**

When seeking a subsequent hearing regarding the issue of detention, a defendant must begin by showing the court that information exists that was not known to the movant at the time of the original hearing and has a "material" bearing on the issue concerning whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person in the community. *See United States v. Hare*, 873 F.2d 796 (5th Cir. 1989). The Fifth Circuit has interpreted this standard as requiring "new" information. *U.S. v. Stanford*, 367 F. App'x 507, 509-10 (5th Cir. 2010) (citing *United States v. Morris*, 452 F. Supp. 3d 484, 487 (N.D. Tex. 2020). Furthermore, the Fifth Circuit has interpreted this provision strictly by affirming refusal to reopen a detention hearing because "testimony of Hare's

4

family and friends is not new evidence." *See also United States v. Dillion*, 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming refusal to reopen hearing where the defendant's evidence consisted of affidavits and letters of people who knew the defendant and they attested to defendant's ability to appear and non-dangerousness; holding this information was available at the time of the hearing).

Here, there are no facts which suffice as material or new. Defendant's Motion amounts to "old wine in new bottles." Everything presented by Defendant in his Motion was before Magistrate Bennett, but now with a new veneer.

a. *The hunt-kill attempt of "Bloodbath"*

"Bloodbath" is the nickname or street name of a leader in the 100% Third Ward or 103 gang. Free Money and 103 had an ongoing feud, which was marked by violence. On July 20, 2022, Jcoi Barley, **Derrick Bland**, Maurkael Brown, and Walter Harris were communicating about Bloodbath via cell phone, and those calls were intercepted and recorded as part of an active Title III wiretap. Specifically, they were actively hunting Bloodbath in an attempt to kill her. Luckily, Bloodbath was not located that day.

Defendant raises no new information, much less material information regarding the hunt-kill attempt of Bloodbath.[4] Defendant instead confirms that multiple members of Free Money were actively communicating, traveling in other areas of town, and searching for a car and address associated with Bloodbath. The facts directly show a coordinated effort, which involved Bland. Additionally, when juxtaposed to the attempted murder of "Freak" three days later on July 23, 2022, no other conclusion can be drawn except that

---

[4] This relates to Superseding Indictment paragraph 129.

Bland was actively seeking out Bloodbath with knowledge he or another Free Money member would murder her.

b. *The hunt-kill attempt of "Freak"[5]*

Freak is the nickname or street name of a member of Rich Kingz. Free Money and Rich Kingz also had an ongoing feud, which was also marked by violence. On July 23, 2022, Jcoi Barley learned Freak was stranded on the intersection of 288 and Yellowstone with a flat tire. Terry Ardoin was sent to the area of 288 and Yellowstone, and Freak was eventually shot in the head. While this was ongoing, Jcoi Barley calls Derrick Bland and instructs him to "stay on the phone, stay on the phone, I might need you. Get in your car…just get in your car and sit right there. In response, Derrick Bland said he was "running to the car right now…I'm coming." Bland, by his own words was ready and eager to help, this of course while a rival gang member is being hunted and is ultimately shot in the head.

c. *Testifying agent's lack of personal observations of crimes is entirely irrelevant to the determination of detention.*

Fed.R.Evid. 1101(d)(3) specifically provides that the rules of evidence (other than with respect to privileges) do not apply to proceedings with respect to release on bail. "Thus, hearsay and other evidence that might be inadmissible at a trial on the merits may be received and considered in a bail hearing." United States v. Golding, 742 F.2d 840, 842 (5th Cir. 1984). Any reference to the testifying agent lacking personal knowledge about any of the crimes is entirely not relevant to the discussion at hand.

---

[5] This relates to Superseding Indictment paragraphs 131-134 and Counts Six and Seven.

d. *Reexamining the Superseding Indictment is the antithesis of "new" information and should not be considered.*

As established by *Hare*, a defendant must begin by showing the court that information exists that was not known to the movant at the time of the original hearing. The content of the Superseding Indictment is not new. The Superseding Indictment was provided seven days before the Detention hearing. See Dkt. at 258. As such, nothing regarding a reexamining of the Superseding Indictment should be considered by this Court.

e. *There is no new information regarding the stolen firearm recovered at the time of the arrest and should not be considered.*

Defendant frames the information about the stolen firearm as new; however, all of the information was presented at the detention hearing. As found in the transcript, "Ms. Napier: Your Honor, although [the firearm] has been reported stolen, there's no allegation that Mr. Bland realized that it was stolen, and we would contest that it was – or that he does not – he's not aware that it was." All other facts referenced regarding the stolen firearm were previously presented at the detention hearing. As such, nothing related to the stolen firearm is "new" nor is it "material" and should not be considered by this Court.

f. *The Defendant's own history is the antithesis of "new" information and should not be considered; moreover, Defendant does **not** have a history of compliance.*

Defense asks this Court to consider facts in direct contradiction to binding and well-established Fifth Circuit precedent. *Hare* is controlling on this point and previously held "testimony of Hare's family and friends is not new evidence." See also *United States v. Dillion,* 938 F.2d 1412, 1415 (1st Cir. 1991) (affirming refusal to reopen hearing where

the defendant's evidence consisted of affidavits and letters of people who knew the defendant and they attested to defendant's ability to appear and non-dangerousness; holding this information was available at the time of the hearing).

First, the evidence presented at the detention hearing contradicts the defense's assertion that Bland has a history of compliance on bond. Specifically, evidence was presented that Defendant failed to abide by curfew and electronic monitoring on over twenty-five occasions. *See* Tr at p 18. Secondly, despite the State of Texas charge of Deadly Conduct ultimately being dismissed, evidence was presented at the detention hearing shows that Bland is a danger to the community. Specifically, testimony established video related to the Deadly Conduct showed the following: Bland made eye contact with individuals in a parking lot, then Bland and the other parties went to their respective cars, and finally they began to open fire at each other in a night club parking lot. Magistrate Judge Bennett found the evidence showed Bland was engaged in a shootout at a bar parking lot. Third, Defendant's family ties, residency, and employment were available and presented at the detention hearing. Nothing in this portion of Defendant's Motion is new, and, as such, should not be considered by this Court.

    g. *The prospective time before trial in an unopposed certified complex case is not a material change in circumstance.*

Defendant's detention is for the safety of the community, and no Due Process violations have occurred. A Due Process claim that continued detention is unconstitutionally excessive is subject to a four-factor test. *Hare*, 873 F.2d 796 (5th Cir. 1989). Such challenges are assessed on a "case-by-case basis." *Id.* at 801.

> In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decisions, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or danger to the community, and the strength of the government's case on the merits, but also the additional factors such as the length of detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasion the delay.

*Id.* Although the length of pretrial detention is one factor courts must consider, "it alone is not dispositive and carries no fixed weight in a due process analysis. *United States v. Stanford*, 722 F.Supp.2d 803, 807 (S.D. Tex. 2010); see also *United States v. Briggs*, 697 F. 3d 98, 101 (2d Cir. 2012) (noting there is no bright-line rule on the permissible length of pretrial detention before detention becomes unconstitutional). The Due Process Clause of the Fifth Amendment forbids pretrial detention that is punitive, rather than regulatory, in nature. *United States v. Stanford*, 394 F. App'x 72, 74 (5th Cir. 2010) (citing *United States v. Salerno*, 481 U.S. 739, 747–48 (1987). "Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention 'appears excessive in relation to' the nonpunitive purpose." *United States v. Stanford*, 722 F. Supp. 2d 803, 806 (S.D. Tex. 2010) (quoting *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993)). Length of detention "*will rarely by itself offend due process.*" *Stanford*, 722 F. Supp. 2d 803, 807 (emphasis added).

The second factor for consideration is nature of any future detention and degree of speculation is the next factor for consideration. The Government has a nonpunitive

reason for detention, namely complexity and adequate defense preparation as discussed below, along with maintaining the safety of the community and allaying flight from prosecution. Further mitigation of any future detention is strongly evidenced by the commitment shown by this District Court's actions to bring about resolution or trial in a careful and fair manner. This is evidenced by the case assignment occurring on March 23, 2026, and an Order setting a Status Conference date on April 24, 2026. The District Court's effort to mitigate future detention is further shown by the additional Motions Hearing set on June 26, 2026, to resolve pending matters and further review detention.

The third factor for consideration is the complexity of the case and time required to adequately prepare for trial. When complexity of a case is a reason for the length of detention, the detention continues to be regulatory in nature rather than penal. *Hare*, 873 F.2d at 801. This case has been certified as "Complex." *See* Dkt at 406. Importantly, every defense counsel, including counsel for Bland, conceded this case is "complex" and confirmed the amount of discovery would require significate time to review and analyze for defenses.  The nature and volume of evidence, namely, numerous audio recordings, cell phone extractions, social media extractions, total a little more than 3 terabytes of discovery. As ruled in the Motion for Designation as Complex Case and Tolling of Speedy Trial Provisions, "the evidence and nature of issues involved in this case are such that it would be unreasonable to expect counsel to adequately prepare for trial within the time limits of the Speedy Trial Act." See Dkt 406. The complexity has necessitated this lengthy detention period and will explain further detention. Therefore, any delays are regulatory and not punitive. Additionally, the expansive scope of this case *was known* at

10

the time at the hearing and directly presented to the judge: "Your Honor, obviously, this is a large-scale RICO conspiracy with 20 different defendants, years of alleged conduct…" *See* Tr. page 56. The fifty-page Superseding Indictment with over one-hundred overt acts alone depicts the complexity of this case, and all parties were aware at the time what would be needed to correctly defend such as case. Nothing about the expected timeline (and unanimity about complexity) is a material change.

Lastly, the fourth factor for determination is the source of any delay in reaching trial. Delays caused by the defendant do not raise due process problems. *See Millan*, 4 F.3d at 1044-45. Here, all defense counsel has noted that due to the voluminous discovery and complexity of the case, which would require time for review and preparation. Moreover, defense was unopposed to certifying the above-captioned case as complex. *See Dkt*. 390.

In sum, no new or material information has been presented to even merit this Court's reconsideration of detention under § 3142(f). Therefore, any discussion and analysis should end at this juncture. However, even if this non-new and non-material information is considered, this information when reviewed individually and with the totality of the record, weighs in favor of continued detention for the defendant. For the reasons set forth below, the defendant has not overcome the rebuttable presumption that he presents a danger to the community and flight risk and should continue to be held without bond.

11

## B.   DEFENDANT HAS NOT PRESENTED ANY CLEAR ERRORS OF LAW AT THE DETENTION HEARING

"'Absent an error of law,'" we will uphold a district court's pretrial detention order 'if it is supported by the proceedings below, a deferential standard of review that [this court] equate[s] to the abuse-of-discretion standard.'" *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992) (quoting *United States v. Aziz*, 2022 WL 1056102, at *1 (5th Cir. Apr. 8, 2022)). Similarly, a factual finding is not clearly erroneous as long as it is plausible in light of the record of the case as a whole. *See United States v. Hughes*, 62 F.3d 395 (5th Cir. 1995) (citing *United States v. Maseratti*, 1 F.3d 330, 340 (5th Cir.1993)).

Here, the government moved for detention under 18 U.S.C. § 3142(f)(1) and (2). For criminal offenses specified in 18 U.S.C. § 3142(e)(3), the Court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community. The Court found no evidence rebutted the presumption and ordered the defendants be detained. There is simply nothing in the record to support any error of law or fact.

## CONCLUSION

Based on the above reasons, the Government respectfully submits that Defendant (i) has not identified any clear errors of law or fact, (ii) has not identified any new or material information concerning detention, (iii) fails to set forth any additional facts that would overcome the rebuttable presumption that applies in this case, (iv) the proposed

conditions of release are woefully insufficient, and (v) there are no due process violations. The original findings for detention remain fully supported (and unrebutted). Accordingly, there are no conditions or combination of conditions that can adequately address the risks.

WHEREFORE, the Government respectfully requests that the Court **DENY** defendant's Motion.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney
Southern District of Texas


*/s/ Charles Hagerman*
CHARLES HAGERMAN
Assistant United States Attorney


DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
United States Department of Justice


*/s/ Ralph Paradiso*
RALPH PARADISO
Trial Attorney

13